**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

WALTER LEWIS,

                    Plaintiff,

      v.

HAROLD GRAHAM, et al.,

                    Defendants.

No. 9:18-CV-451
(MAD/CFH)

---

**APPEARANCES:**

Walter Lewis
11-B-3702
Auburn Correctional Facility
P.O. Box 618
Auburn, New York 13021
Plaintiff pro se

Attorney General for the
   State of New York
The Capitol
Albany, New York 12224
Attorney for Defendants

**OF COUNSEL:**

HELENA LYNCH, ESQ.
Assistant Attorney General

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

      Plaintiff pro se Walter Lewis ("plaintiff"), an inmate who was, at all relevant times,

in the custody of the New York State Department of Corrections and Community

Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that

defendants Superintendent ("Supt.") of Auburn Correctional Facility ("Auburn"), Harold

---

[1]  This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28
U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Graham ("Supt. Graham"); Auburn Correctional Sergeant ("Sgt.") Kevin Wise ("Sgt. Wise"); Senior Counsel at Auburn, Mark Mogavero ("Mogavero"); Auburn Correctional Officer ("C.O.") Derek Butsch ("C.O. Butsch"); Inmate Grievance Special Investigator Loraine Klock ("Klock"); Grievance Supervisor Cheryl Parmiter ("Parmiter"); and Donald Venettozzi ("Venettozzi")—who, at all relevant times, were employed at Auburn—violated his constitutional rights under the First Amendment. See Dkt. No. 36 (Second Amended Complaint, "SAC").

Presently pending before the Court is (1) the motion of Supt. Graham, Sgt. Wise, Mogavero, C.O. Butsch, and Venettozzi to dismiss the SAC pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6), see Dkt. No. 32; and (2) the motion of Klock and Parmiter to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(6). See Dkt. No. 56.[2] Plaintiff opposed the motion of Supt. Graham, Sgt. Wise, Mogavero, C.O. Butsch, and Venettozzi, see Dkt. No. 50, and those defendants filed a reply. See Dkt. No. 55. Plaintiff did not file a separate opposition to the motion of Klock and Parmiter. For the reasons that follow, it is recommended that defendants' motions be granted in their entirety and plaintiff's SAC be dismissed.

**I. Background**

---

[2] Following initial review of plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), District Judge Mae D'Agostino dismissed certain claims and defendants from the action, and held that the only remaining claims were " [p]laintiff's First Amendment claims against [Supt.] Graham, [Sgt.] Wise, Mogavero, [C.O.] Butsch, Jane Doe Special Investigator, Jane Doe Grievance Supervisor, and Venettozzi . . . ." Dkt. No. 11 at 10. In November 2018, the Court denied as moot plaintiff's motion for leave to file a SAC; and ordered plaintiff to file a SAC substituting Klock and Parmiter for the Doe defendants by handwriting in the caption and all appropriate locations in the Amended Complaint. See Dkt. No. 35 at 8. Plaintiff complied with the Court's November 2018 Order by filing the SAC (Dkt. No. 36) on December 26, 2018, which substituted Klock and Parmiter for the Doe defendants. Plaintiff's SAC is the operative pleading and supersedes all prior pleadings. See Dkt. No. 38.

**A. Facts**

The facts are reviewed in the light most favorable to plaintiff as the non-moving

party. See subsection II.A., infra. At all relevant times, plaintiff was an inmate

incarcerated at Auburn. On December 8, 2014, while incarcerated at Auburn, plaintiff

received his appellate counsel's brief, appendix, and two compact discs ("C.D.s")

relating to his direct appeal from a November 2011 criminal conviction in Onondaga

County Court. See Dkt. No. 36-1 at 1 ¶ 1. The two C.D.s were part of the record on

appeal and were contained inside of the appellate appendix. See Dkt. No. 10-1 at 31.[3]

On December 15, 2014, plaintiff filed a notice of motion to file a pro se supplemental

brief, which the Supreme Court, Appellate Division, Fourth Department ("Fourth

Department"), granted. See Dkt. No. 36-1 at 2 ¶ 2; Dkt. No. 10-1 at 3-5. On January

22, 2015, plaintiff filed a notice of motion with the Fourth Department requesting an

extension of time to file his pro se supplemental brief, which the Fourth Department

granted and set plaintiff's deadline as February 23, 2015. See Dkt. No. 10-1 at 11.

On February 16, 2015, plaintiff again moved for an extension of time to file his

pro se supplemental brief. See Dkt. No. 10-1 at 8. In his affirmation in support his

second motion for an extension of time, plaintiff argued that "his pro se supplemental

brief . . . is based solely upon grand jury issues." Id. at 12. Plaintiff contended that he

needed "the grand jury minutes, and other grand jury documents" because without

---

[3] Although plaintiff did not resubmit the list of exhibits attached to his Amended Complaint, see Dkt. No. 10-1, pursuant to the Court's November 2018 Order, plaintiff was directed to resubmit his Amended Complaint with Klock and Parmiter substituted in all appropriate locations for the Doe defendants, which he did. See Dkt. No. 35 at 8; Dkt. No. 36; Dkt. No. 36-1. Moreover, defendants rely on the list of exhibits contained in Dkt. No. 10-1 to formulate their factual recitation and arguments. See Dkt. No. 43-1 at 7 n.1; Dkt. No. 56-1 at 7 n.2. Accordingly, in light of the Court's November 2018 Order, defendants' reliance on the list of exhibits in Dkt. No. 10-1, and plaintiff's pro se status, it appears appropriate to consider the exhibit list in Dkt. No. 10-1 as if it were attached to the SAC for purposes of the present motions.

them, his "pro se brief [would be] submitted solely upon accusations, assumptions, [and] hypothetical [sic]." Id.  Plaintiff stated that he "made several requests for" the grand jury minutes to support his pro se supplemental brief, but had not received them.  Id. at 10. In a memorandum and order entered March 3, 2015, the Fourth Department granted plaintiff's second motion for an extension; set the deadline for filing 10 copies of his pro se supplemental brief with proof of service on the People as May 4, 2015; and stated that "[n]o further extensions for filing a pro se supplemental brief will be granted."  Dkt. No. 10-1 at 2.

While Auburn was on lock down status from March 1 to March 6, 2015, an unidentified corrections officer conducted a cell frisk of plaintiff's cell, examined plaintiff's appellate counsel's brief, appendix, and C.D.s, and "returned the items and provided plaintiff with a no contraband slip."[4]  Id. at ¶ 5.  On April 6, 2015, C.O. Butsch conducted a cell frisk of plaintiff's cell and confiscated the two C.D.s while plaintiff was at the Auburn law library.  See Dkt. No. 36-1 at 2 ¶ 6.  C.O. Butsch issued plaintiff an inmate misbehavior report charging him with "[p]ossession of prohibited article" and "[u]nauthorized article of prohibited contraband" in violation of DOCCS Rules 113.22 and 113.23, respectively.  Dkt. No. 10-1 at 20.  The inmate misbehavior report stated, as relevant here, that C.O. Butsch found the two C.D.s "hidden in between legal paperwork . . . .  Contraband secured per directive 4910-A in drop box."  Id.  When plaintiff discovered that the C.D.s were missing upon his return to his cell, he informed Sgt. Wise that he had previously been authorized to be in possession of the two C.D.s

---

[4] No such document is contained in the record before the Court.

See Dkt. No. 36-1 at 2 ¶ 6.  Plaintiff was then placed in Auburn's Special Housing Unit ("SHU").  See id. at 3 ¶ 7.

On April 9, 2015, following a disciplinary hearing, Mogavero found plaintiff guilty of the charges in the misbehavior report.  See Dkt. No. 10-1 at 22-24.  Mogavero "f[ou]nd [C.O. Butschs'] written report to be credible in that upon a random cell frisk [two] [C.D.s] were found" and noted "[plaintiff's] admittance of guilt to the charges."  Id. at 22.  According to plaintiff, Mogavero stated, off the record, "that if plaintiff plead [sic] to the charges, he would give plaintiff time served and release plaintiff from [SHU] to complete the supplemental brief."  Dkt. No. 36-1 at 3 ¶ 7 (internal quotation mark omitted).  "Plaintiff agreed" to Mogavero's offer, but once "Mogavero turned the tape on and plaintiff pleaded guilty to the charges, []Mogavero went against the agreement on the hearing tape."  Id. at 4 ¶ 7.  Mogavero instructed that "[b]oth [C.D.s] be placed in [plaintiff's] personal property."  Id.  Plaintiff was sentenced to 30 days of keep lock[5] and loss of packages, commissary, and phone.  See id. at 23.  Plaintiff appealed Mogavero's determination.  See Dkt. No. 10-1 at 39.

"[B]etween the 10th or 13th of April 2015," Klock interviewed plaintiff and "obtained information about the two C.D.s and the relevant material on the record of trial."  Dkt. No. 36-1 at 4 ¶ 8.  Klock "stated that she was confiscating the two C.D.s to view them herself to see the material on them."  SAC at 3 ¶ 4.  Klock returned the two C.D.s to plaintiff on May 5, 2015, "a day after the deadline date" for plaintiff to file his pro se supplemental brief with the Fourth Department.  Id. at 4 ¶ 4; see Dkt. No. 10-1 at 52

---

[5] Although not entirely clear, plaintiff appears to indicate that he was released from SHU following his April 9, 2015 disciplinary hearing and placed on keep lock status until April 23, 2015.  See Dkt. No. 36-1 at 3 ¶ 7, 6 ¶ 14; Dkt. No. 10-1 at 23, 27.

(Memorandum from the IRC Property Clerk at Auburn, dated May 5, 2015, stating that "[two] contraband [C.D.s]" were "added to [plaintiff's] personal property.").

On April 14, 2015, plaintiff wrote a letter to the Fourth Department to inform the court that he was on keep lock status and that he had lost package, commissary, and phone privileges, and requested "another extension for [two] weeks" to file his pro se supplemental brief. See Dkt. No. 10-1 at 27. In this letter, plaintiff blamed his assigned counsel for his punishment, stating that, because she "sent contraband to [Auburn]"— the two C.D.s—he was "being punished for her actions." Id. Plaintiff also wrote a letter to his assigned appellate counsel on April 14, 2015, informing her that he had been placed in SHU and subsequently on keep lock status for possessing the C.D.s. See Dkt. No. 10-1 at 30. Assigned counsel responded in a letter dated April 16, 2015, in which she stated her confusion as to why plaintiff was only then being punished for possessing the C.D.s when she had "served [him] with the brief and appendix," which included the C.D.s, "in October of [2014]." Id. at 31. She also informed plaintiff that she had contacted officials at Auburn and DOCCS' counsel in Albany to attempt to resolve the issue. See id. In a follow-up letter dated April 17, 2015, plaintiff's assigned appellate counsel noted that the C.D.s were "part of the appellate record" and advised him that staff at the Fourth Department had informed her that, "as an assigned attorney[, she was] not *required* to provide [plaintiff] with a copy of the Record or Appendix" and that "not all attorneys provide th[o]se documents to their incarcerated assigned clients." Id. at 41. However, she stated that she was "searching for a way to satisfy both [her] clients and the system so that there [we]re no repercussions to any party concerned." Id.

On April 16, 2015, plaintiff wrote a letter to Supt. Graham requesting special access to the law library to "view the exhibits" so that he could "perfect [his] supplemental brief." Dkt. No. 10-1 at 33. In the SAC, plaintiff specifies that, in writing to Supt. Graham, he was seeking to "view[] the material on the two . . . C.D.s." SAC at 4 ¶ 10. Supt. Graham did not respond to plaintiff's April 16, 2015 letter. See id. at 5 ¶ 11. On April 18, 2015, plaintiff filed a grievance concerning the confiscation of his C.D.s, his placement on keep lock, and the loss of privileges. See Dkt. No. 10-1 at 36-37. Plaintiff argued that the confiscation of the C.D.s was wrongful because he had been authorized to possess them by the mail officer on December 8, 2014, and again during the March 2015 lockdown. See id. at 36, 37. Plaintiff stated that he was "[b]eing denied to [sic] properly perfect and study for [his] supplemental brief that due [sic] May [4], 2015." Id. at 37.

On April 21, 2015, Venettozzi "reviewed and reversed" Mogavero's April 9, 2015 determination. Id. at 39 (capitalization omitted); see SAC at 6 ¶ 6. The same day, the Fourth Department acknowledged receipt of plaintiff's April 14, 2015 letter; advised him of his right to make a motion for an extension of time to file and serve his pro se supplemental brief; informed plaintiff that his motion would, among other things, be required to contain a return date and proof of service of a copy of the motion on the People and assigned counsel at least 13 days prior the selected return date if served by regular mail; and noted that any motion for an extension should be made promptly, as his appeal was scheduled to be argued on May 27, 2015. Dkt. No. 10-1 at 28. Plaintiff was released from keep lock on April 23, 2015, and was granted special access to the Auburn law library "on or about [April 27, 2015]." Dkt. No. 36-1 at 6 ¶ 14.

On April 28, 2015, plaintiff filed a second grievance, contending that the confiscation of his C.D.s "denied [him] access to the court and the performance of perfecting his supplemental brief." Dkt. No. 10-1 at 45. Plaintiff requested "[t]hat the law library at Auburn . . . be updated[, b]ecause the new processing of the court are [sic] now in a digital era." Id. He also requested that he received two "mandatory call out [sic] to the library of deadline and a [sic] extension for completion of supplemental brief." Id. On May 7, 2015, plaintiff received a response from the Inmate Grievance Review Committee ("IGRC") concerning his April 28, 2015 grievance, which stated: "The IGRC agrees that the law library should be up-to-date as possible in terms of technology being used that reflects the current time period. All other issues in the complaint has [sic] been resolved. Grievance is granted to that extent." Dkt. No. 10-1 at 43; SAC at 5 ¶ 13.[6] Plaintiff appealed the IGRC determination. See Dkt. No. 36 at 10.

On May 16, 2015, "[p]laintiff filed a notice of motion for an extension of time" with the Fourth Department seeking another extension of time to file his pro se supplemental brief. Dkt. No. 36-1 at 6 ¶ 14; see Dkt. No. 10-1 at 47. On May 18, 2015, "[p]laintiff filed 10 copies of [his motion with] the court and [served] one copy upon all parties." Dkt. No. 36-1 at ¶ 15. Plaintiff also submitted a "verified affirmation in support of [his] supplemental brief," which the Fourth Department received on May 22, 2015, wherein plaintiff requested that the court find that his assigned appellate counsel was "as a matter of **law**[,] totally incompetent in refusing to argue matters that's [sic] not DEHORED of the record regarding [his] actual and factual innocence." Dkt. No. 10-1 at

---

[6] It is unclear what plaintiff and the Auburn IGRC were referring to with respect to technological updates to the Auburn library. However, plaintiff does not allege that the Auburn library did not have a C.D. player during the period he possessed the C.D.s from December 8, 2014, to April 6, 2015, or that he was unable to view the C.D.s during that period. See generally SAC; Dkt. No. 36-1.

64.  Plaintiff also filed an affidavit in support of his motion, which the Fourth Department received on May 26, 2015.  See Dkt. No. 10-1 at 48-49.  In his affidavit, plaintiff stated that he had been placed in SHU and on keep lock "due to [Auburn's] misunderstanding of the court [sic] rules," which "hinder[ed]" his ability to file his supplemental brief.  Id. at 49.  On May 18, 2015, the Inmate Grievance Program ("IGP") responded to plaintiff's appeal from his April 28, 2015 grievance, noting that plaintiff "ha[d] bee given [s]pecial [a]ccess to the [l]aw [l]ibrary . . . after receiving a reversal of his Tier III ticket.  Appeal is granted to that extent."  Dkt. No. 36 at 10.  Two days later, on May 20, 2015, plaintiff signed an appeal statement, which is attached to the IGP's May 18, 2015 response, in which he stated that he "want[ed] to view C.D.s of record for completion of supplemental brief."  Id.

On May 26, 2015, the Fourth Department returned plaintiff's papers in which he sought an extension of time to file and serve his pro se supplemental brief for plaintiff's failure to provide a proper return date on the notice of motion.  See Dkt. No. 10-1 at 60.  The Fourth Department also returned plaintiff's "single pro se supplemental brief . . . as untimely," and noted that, pursuant to the Court's March 2015 order and applicable court rules, 10 copies with proof of service of one brief on the People were due no later than May 4, 2015, as opposed to the single copy plaintiff provided.  Dkt. No. 10-1 at 58.  That same day, plaintiff's assigned appellate counsel informed the Fourth Department in a letter of her concern that a conflict existed in light of plaintiff's allegations that she acted incompetently in representing him on appeal.  See id. at 66-67.  Plaintiff's assigned counsel argued his appeal before the Fourth Department the following day, see Dkt. No. 36-1 at 7 ¶ 17, which unanimously affirmed plaintiff's conviction.  See

People v. Lewis, 129 A.D.3d 1546, 1547 (N.Y. App. Div. 4th Dept. 2015), leave to appeal denied, 26 N.Y.3d 969 (N.Y. 2015).

### B. Plaintiff's Argument

Plaintiff contends that defendants "violat[ed] [his] First Amendment[] [rights by] fail[ing] to provide [him] with what was needed in order to attack his conviction or sentence directly or collaterally by means of confiscation and deprivation of reviewing the relevant material on the two C.D[.]s" "shortly before the deadline" for filing his pro se supplemental brief at the Fourth Department.  Dkt. No. 36-1 at 7.  Plaintiff asserts that Supt. "Graham, knowing of the confiscation of the relevant material fail [sic] to provide plaintiff with what was needed in order to perfect his supplemental brief and present the legal claim in a timely fashion to attack his conviction and sentence . . . ."  Dkt. No. 36-1 at 5 ¶ 10.  Further, he argues that Mogavero's April 9, 2015 determination and related sanctions, including the directive that the C.D.s be placed in plaintiff's personal property, "compounded the conditions of plaintiff perfecting the supplemental brief."  Id. at 4 ¶ 7. He also contends that Mogavero "should have informed [Auburn personnel] to make the viewing available to plaintiff so that [he] can [sic] complete his supplemental brief . . . ." Id. at 4 ¶ 7.  In addition, plaintiff asserts that "Venettozzi was full [sic] aware of the confiscation of [the two] C.D.s that was part of the Appellate record," and "should have made it possible for the viewings by contacting Auburn . . . to satisfy the plaintiff's right of access to the court."  Id. at 5 ¶ 12.

Plaintiff also argues that Klock "prevented [him] from filing his supplemental brief by depriving plaintiff of the information upon the two [C.D.s] the facts relevant to the

state court record" insofar as she confiscated the C.D.s and did not return them to him until May 5, 2015, the day after his deadline for filing his pro se supplemental brief. SAC at 6 ¶ 7.  Plaintiff further argues that Parmiter violated his First Amendment right of access to the courts because she "fail[ed] to provide [his] rights to resolving the issue or obtaining an administrative route to a path to a relief of viewing the C.D.s" and that she "did not get in touch with [Supt. Graham] on how this situation be [sic] resolved to permit a fairly [sic] route to relief." Id. at 5 ¶ 13.  Moreover, plaintiff alleges that C.O. Butsch violated his First Amendment right of access to the courts by confiscating the C.D.s during the cell frisk on April 6, 2015.  See Dkt. No. 36-1 at 2 ¶ 6, 7.  Finally, liberally construing the SAC, plaintiff appears to argue that Sgt. Wise violated his First Amendment right of access to the courts by failing to order the return of the C.D.s upon plaintiff's informing him that he was previously authorized to possess them.  See id. at 2 ¶ 6, 7.

### C. Defendants' Motions to Dismiss[7]

Defendants contend that the SAC fails to state a First Amendment claim of denial of the right to access to the courts.  See Dkt. No. 43-1 at 13; Dkt. No. 56-1 at 13. Defendants argue that plaintiff had access to the courts on his direct appeal of his criminal conviction because he was represented by assigned counsel who submitted briefs and argued on his behalf before the Fourth Department.  See Dkt. No. 43-1 at 15;

---

[7] As Supt. Graham, Sgt. Wise, C.O. Butsch, Mogavero, and Venettozzi state in their motion to dismiss, at the time that motion was served, Klock and Parmiter had "not yet been served and [we]re not yet represented." Dkt. No. 43-1 at 16 n.3.  Further, Klock and Parmiter note that their motion to dismiss asserts nearly identical arguments to the motion to dismiss of Supt. Graham, Sgt. Wise, C.O. Butsch, Mogavero, and Venettozzi.  See Dkt. No. 56-1 at 6 n.1.  Accordingly, the Court will consider defendants' arguments together to the extent they are presented in identical terms in both motions.

Dkt. No. 56-1 at 15.  Further, defendants argue that neither "[p]laintiff's disagreement with the arguments made by [assigned appellate] counsel" nor his "dissatisfaction with his [assigned] counsel's performance" supports a denial of access claim.  See Dkt. No. 43-1 at 16; Dkt. No. 56-1 at 16.

Further, defendants argue, plaintiff has failed allege that defendants deliberately and maliciously confiscated his C.D.s in order to prevent his from timely filing his supplemental brief.  See Dkt. No. 43-1 at 16; Dkt. No. 56-1 at 16.  Defendants argue that plaintiff does not allege that either C.O. Butsch or Sgt. Wise was aware that the C.D.s contained legal material.  See Dkt. No. 43-1 at 16-17.  Defendants also contend that plaintiff fails to allege that Sgt. Wise was personally involved in any alleged constitutional violation resulting from the confiscation of the C.D.s because plaintiff argues only that he informed Sgt. Wise that he was previously authorized to possess the C.D.s but does not contend that he informed Sgt. Wise that the C.D.s contained legal materials or that Sgt. Wise was aware of such.  See id. at 17.  In addition, defendants aver that plaintiff fails to sufficiently allege that Mogavero maliciously interfered with plaintiff's ability to access the courts.  See id. at 18.  Moreover, defendants argue that plaintiff fails to sufficiently allege that Supt. Graham interfered with his right to access the courts merely by failing to respond to his April 16, 2015 letter, or that Venettozzi did so by reversing the April 9, 2015 hearing determination. See id.

Defendants also argue that the SAC fails to plausibly allege a First Amendment right of access claim against Klock because plaintiff does not contend that he informed Klock that he needed the C.D.s to complete his supplemental pro se brief.  Dkt. No. 56-

1 at 17.  Similarly, defendants argue that plaintiff has failed to plausibly allege that Parmiter maliciously attempted to deny plaintiff of his right of access to the courts.  See id.  In addition, defendants argue that the SAC fails to allege facts establishing that Parmiter was personally involved in the confiscation of plaintiff's C.D.s.  See id.

Defendants additionally argue that plaintiff has failed to plausibly allege that the arguments he would have advanced in his pro se supplemental brief were meritorious or that confiscation of the C.D.s prejudiced his appeal; therefore, defendants contend, plaintiff fails to allege actual injury, which is fatal to his First Amendment right of access claim.  See Dkt. No. 43-1 at 18; Dkt. No. 56-1 at 17.  In particular, defendants observe that plaintiff admits to being in possession of the C.D.s from December 8, 2014, until April 6, 2015, and does not allege that he was unable to view the material contained on the C.D.s during that four-month period.  See Dkt. No. 43-1 at 18-19; Dkt. No. 56-1 at 17-18.  Further, defendants aver that plaintiff fails to allege that the content of the C.D.s was relevant to his pro se supplemental brief, or how he was prejudiced from finishing that brief when, despite the confiscation of the C.D.s, he was still in possession of his assigned counsel's appellate brief and appendix.  See Dkt. No. 43-1 at 19; Dkt. No. 56-1 at 18.

Moreover, defendants note that plaintiff has indicated that the C.D.s contained the victim's 911 recording and video footage of his victim shopping at Price Chopper and using her cell phone several hours after the incident for which he was convicted, but contend that plaintiff fails to plausibly state how the contents of those recordings support his claim of actual innocence.  See Dkt. No. 56-1 at 18 n.4.  Finally, defendants

argue that plaintiff's claims are barred by the doctrine of qualified immunity. See Dkt. No. 43-1 at 22; Dkt. No. 56-1 at 21.

## D. Plaintiff's Opposition[8]

In opposition to defendants Supt. Graham's, Sgt. Wise's, C.O. Butsch's, Mogavero's, and Venettozzi's motion to dismiss, plaintiff contends that, on April 6, 2015, he "explained to C.O. Butsch and Sgt. Wise[] about the items and how he became in possession of those items." Dkt. No. 50 at 3. He also posits that he pleaded guilty before Mogavero at the disciplinary hearing "under duress due to the imports [sic] of completing his supplemental brief." Id. Further, he contends that, "[o]n or about April 10-13[,] 2015, [he] explained to []Klock the import [sic] of the contents of the C.D.s and that he was pursuing an actual innocence claim which the C.D.s shows [sic] exculpatory evidence of his innocence, and that the Fourth Department will [sic] not grant anymore extension for filing his supplemental brief." Id. In particular, he posits, for the first time, that Klock confiscated the C.D.s "knowing of the [Fourth Department's] memorandum," which set the deadline for filing his pro se supplemental brief as May 4, 2015, and deliberately failed to return the C.D.s until May 5, 2015. Id. at 8. He avers, the confiscation of the C.D.s "prevented [him] from timely litigating his claims before the

---

[8] Plaintiff only filed a response in opposition to the motion to dismiss of Supt. Graham, Sgt. Wise, C.O. Butsch, Mogavero, and Venettozzi. See Dkt. No. 50. However, in his opposition, he addresses his claims with respect to Klock. See Dkt. No. 50 at 3, 8. Accordingly, insofar as plaintiff technically failed to respond to the arguments raised in support of Klock's motion, it is not recommended that his claims asserted against her be dismissed as abandoned. Cf. Heyliger v. West, No. 9:18-CV-0336 (TJM/TWD), 2019 WL 4757334, at *4 (N.D.N.Y. Sept. 30, 2019) (dismissing the pro se plaintiff's state law claim as abandoned where the plaintiff failed to respond to that aspect of the defendants' motion to dismiss); Thurmand v. Univ. of Connecticut, No. 18-CV-1140 (JCH), 2019 WL 369279, at *3 (D. Conn. Jan. 30, 2019) ("Courts in this Circuit have presumed that plaintiffs have abandoned their claims when they do not oppose a motion to dismiss them." (collecting cases)).

deadline [and] caused [his] supplemental brief to be rejected." Id. at 9.  He further posits, generally, that all defendants "were personally involve [sic] in the deprivation of [his] access to the court" and that all defendants acted deliberately and maliciously to prevent him from submitting his pro se supplemental brief.  Id. at 5.  He states that, following Venettozzi's reversal of the April 9, 2015 determination, defendants "were put on notice[] an opportunity [sic] to correct deprivation [sic] of plaintiff's rights to the court." Id.  He avers that "defendants had ample time to arrange the viewing of the record from April 6, 2015[,] to May 4, 2015, shortly before the deadline."  Id. at 6.

Moreover, plaintiff contends that, contrary to defendants' argument, the claims he sought to advance in his pro se supplemental brief had merit and, therefore, "deprivation of the C.D.s . . . caused . . . actual injury having being deprive [sic] and prevented from using the material on the [P]rice [C]hopper video that supported" his claims of "[p]rosecutorial [m]isconduct, [i]neffective [a]ssistance of [t]rial [c]ounsel[,] and . . . [a]ctual [i]nnocence."  Id. at 9, 10.  Specifically, plaintiff states that "there is irrefutable proof that was not presented at trial that clearly dispute [sic] the [P]eople's theory of what happen [sic] the morning of January 9, 2011."  Id. at 10.  Plaintiff argues that the "material on the [P]rice [C]hopper C.D[.] was relevant[] and give merit to his claims," because that footage shows that the victim "did not appear to be impaired nor to have any bruises or black[]eye during shopping at [P]rice [C]hopper at 6:00[ P.M.] which totally disputes the [P]eople's theory . . . that an assault occurred the morning of January 9, 2011."  Id. at 10.  However, plaintiff contends that in September 2017, in relation to his habeas corpus petition, this Court directed Auburn to make the C.D.s available for him to review.  See id. at 7.  When plaintiff viewed the C.D.s after they

C.D.s were reformatted in order to be compatible with Aubrun's new C.D. player, the exculpatory portions of the Price Chopper footage showing "the victim texting, using her phone during the shopping in [P]rice [C]hopper was [sic] missing." See id. at 7-8. Plaintiff argues that the loss of this footage makes it impossible for him to demonstrate that the claims he would have asserted in his pro se supplemental brief would have been meritorious. See id. at 8. He further states that "the missing footage of the victim texting, using her phone . . . was explored during the viewing of the video during trial." Id. at 8. Plaintiff also advances a litany of alleged failures on the part of his trial counsel. See id. at 12-13.

### E. Defendants' Reply

In reply to plaintiff's opposition, Supt. Graham, Sgt. Wise, C.O. Butsch, Mogavero, and Venettozzi, reassert the arguments advanced in their motion to dismiss and contend that plaintiff has failed to refute their entitlement to dismissal of the SAC. See Dkt. No. 55 at 3. Defendants focus in particular on plaintiff's arguments with respect to the purportedly exculpatory Price Chopper footage, arguing that he "has not plausibly pled [sic] that his victim's ability to shop and use her cell phone several hours after the crime establishes his factual innocence or creates a probability of a favorable verdict." Id. at 4-5. In any event, defendants note, the Fourth Department held that the evidence against plaintiff was overwhelming. See id. at 5 (citing Lewis, 129 A.D.3d at 1547-48). Further, defendants posit that plaintiff fails to plausibly allege how the 911 recording or Price Chopper footage "had any bearing on his arguments of ineffective assistance of counsel." Id. at 5.

## II. Discussion[9]

### A. Legal Standard for Motions Pursuant to Fed. R. Civ. P. 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief can be granted."  When considering such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor."  Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009) (quoting Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009)) (internal quotation marks omitted).  However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that is "'plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (internal quotation marks and citation omitted).  Determining whether plausibility exists is "a context-

---

[9] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a *pro se* litigant is entitled to special solicitude, that a *pro se* litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest.  At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by *pro se* litigants, and that *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se*, . . . a court is obligated to construe his pleadings liberally.") (internal quotation marks and citations omitted).

Furthermore, "[a] district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (citing Gill v. Mooney, 824 F.2d 192, 195 (2d Cir. 1987)).  In addition, in assessing a motion to dismiss, the court may rely upon "documents attached to the complaint as exhibits[] and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted); see also Keyes v. Annucci, No. 9:18-CV-0372 (GTS/DJS),

2019 WL 4602240, at *7 n.1 (N.D.N.Y. Sept. 23, 2019) (collecting authority and explaining, in detail, that a district court assessing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or 12(c) may consider any written instrument attached to the complaint as an exhibit and documents incorporated in it by reference).

## B. First Amendment Right of Access to the Courts

"Prisoners have a First Amendment right of meaningful access to the courts, which requires state prisons 'to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" Bellezza v. Holland, 730 F. Supp. 2d 311, 314 (S.D.N.Y. 2010) (quoting Bounds v. Smith, 430 U.S. 817, 825 (1977)). "This right of access, however, guarantees a prisoner no more than reasonable access to the courts." Tafari v. McCarthy, 714 F. Supp. 2d 317, 345 (N.D.N.Y. 2010) (internal quotation marks and citation omitted); see also Carolina v. Rubino, 644 F. App'x 68, 71 (2d Cir. 2016) (summary order) ("This right is not unlimited.").

"To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating both (1) that the defendant acted deliberately and maliciously, and (2) that the plaintiff suffered an actual injury." Lasher v. Dagostino, No. 9:16-CV-0198 (BKS), 2016 WL 1717205, at *4 (N.D.N.Y. Apr. 28, 2016) (citing Lewis, 518 U.S. at 353). "A hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts." Amaker v. Haponik, No. 98-CV-2663 (JGK), 1999 WL 76798, at *3 (S.D.N.Y. Feb.17, 1999). Instead, a plaintiff must demonstrate "actual injury" by establishing that the denial "hindered his efforts" to pursue a non-frivolous

legal claim. Lewis, 518 U.S. at 349, 351. "Courts considering access-to-courts claims generally find that an inmate represented by counsel (retained or assigned) cannot plausibly claim that his right to access the courts has been denied in the *constitutional* sense of the phrase." Bowens v. Bombardier, No. 9:18-CV-1377 (DNH), 2019 WL 1900963, at *5 (N.D.N.Y. Apr. 29, 2019); see Bourdon v. Loughren, 386 F.3d 88, 96 (2d Cir. 2004) ("For example, the assistance of an attorney . . . is a permissible and sufficient means of satisfying the right of access to the courts, . . . ."); Perez v. Metro. Corr. Ctr. Warden, 5. F. Supp. 2d 208, 211 (S.D.N.Y. 1998) (Sotomayor, J.) ("If an inmate is provided with legal counsel, the inmate is given a 'reasonably adequate opportunity' to present his claim and there is no violation of constitutional magnitude.").

## 1. Actual Injury

Plaintiff has failed to sufficiently allege that he suffered actual injury based on the confiscation of the C.D.s. As an initial matter, plaintiff was represented on appeal of his criminal conviction by assigned appellate counsel who submitted a brief and argued on his behalf before the Fourth Department; thus, plaintiff he was afforded "reasonable access to the courts." Tafari, 714 F. Supp. 2d at 345; see Bourdon, 386 F.3d at 96; Perez, 5. F. Supp. 2d at 211; Bowens, 2019 WL 1900963, at *5. Moreover, plaintiff's allegations that he was prevented from timely filing his pro se supplemental brief because the C.D.s were confiscated in April 2015 are conclusory and directly contradicted by his exhibits. See Lewis, 518 U.S. at 353; Lasher, 2016 WL 1717205, at *4. In particular, plaintiff made clear in his affirmation in support his second motion for an extension, that he intended to assert claims of actual innocence, prosecutorial

misconduct, and ineffective assistance of trial counsel in "his pro se supplemental brief

. . . based solely upon grand jury issues"—which he does not contend are in any way

part of the contents of the C.D.s.  Dkt. No. 10-1 at 12 (emphasis added).  Moreover,

given that plaintiff possessed the C.D.s for approximately four months—December 8,

2014, until April 6, 2015—and does not allege that he was unable to view them during

that time, the Court finds implausible plaintiff's assertion that he was denied access to

the courts based on the confiscation of those C.D.s.  See Dkt. No. 36-1 at 1 ¶ 1, 2 ¶ 6.

Rendering plaintiff's allegations in this regard further implausible are his statements

made in opposition to defendants' motion to dismiss in which he is able to recount

detailed specifics of the contents of the C.D.s—despite also asserting that the

purportedly exculpatory footage contained thereon was lost when the C.D.s were

reformatted in 2017.  See Dkt. No. 50 at 7-10.  As plaintiff is now, after several years,

able to recount the details of the contents of the C.D.s on which he allegedly sought to

rely in his pro se supplemental brief, he is hard pressed to allege that he was prejudiced

when the C.D.s were confiscated in April 2015 after being in his possession for nearly

four months.  See id.  In addition, although defendants indisputably did not return the

C.D.s until May 5, 2015, the day after the deadline for filing and serving his pro se

supplemental brief, plaintiff does not allege that he was not in possession of his

assigned appellate counsel's brief and appendix on appeal.  See generally SAC; Dkt.

No. 36-1.

Moreover, the Fourth Department, in response to plaintiff's April 14, 2015 letter

requesting an extension of time to file his supplemental brief, advised plaintiff of his right

to file a motion to request another extension of time and provided him with the precise

requirements for doing so.  See Dkt. No. 10-1 at 27-28.  Therefore, contrary to plaintiff's

contention, his motion was rejected based on his failure to provide a proper return date

on the notice of motion—not because of any action on the part of defendants.  See Dkt.

No. 10-1 at 60.  Also contrary to plaintiff's claims, the Fourth Department not only

rejected his brief as untimely but, alternatively, for plaintiff's failure to comply with the

court's rules concerning filing and service.  See Dkt. No. 10-1 at 58.  Thus, even if

timely filed, plaintiff's supplemental brief was procedurally defective.  See id.  In any

event, it is undisputed that plaintiff was released from keep lock on April 23, 2015, and

was granted special access to the Auburn law library "on or about [April 27, 2015]."  Dkt.

No. 36-1 at 6 ¶ 14.  As plaintiff has demonstrated that he was keenly aware of the

content in the C.D.s upon which he purportedly sought to rely, the four months prior to

the confiscation of the C.D.s, as well as the time between April 27, 2015, and his May 4,

2015 deadline would appear to be ample time in which to complete his supplemental

brief even if slightly delayed by the confiscation, rendering his allegation that he was

unable to timely file the brief implausible.  See id.; Dkt. No. 50 at 7-10; see also Davis v.

Goord, 320 F.3d 346, 352 (2d Cir. 2003) ("Mere delay in being able to work on one's

legal action or communicate with the courts does not rise to the level of a constitutional

violation." (internal quotation marks and citation omitted)).  Accordingly, as plaintiff has

failed to establish that he suffered any actual injury, it is recommended that his First

Amendment right of access to the courts claim be dismissed.

**2. Defendants' Intent and Personal Involvement**

Alternatively, as defendants contend, plaintiff's allegations that defendants confiscated and withheld his C.D.s deliberately and maliciously for the purpose of causing him to miss the deadline for filing his pro se supplemental brief are wholly conclusory and fail to state a claim. See Dkt. No. 43-1 at 16; Dkt. No. 56-1 at 16.

### a. C.O. Butsch

Plaintiff's conclusory statement made in opposition to defendants' motion to dismiss, that, on April 6, 2015, he "explained to C.O. Butsch and Sgt. Wise[] about the items and how he became in possession of those items," Dkt. No. 50 at 3, does not plausibly allege that C.O. Butsch was aware of the contents of the C.D.s or that he confiscated them deliberately and maliciously for the purpose of preventing plaintiff from timely filing his pro se supplemental brief. See Harris, 572 F.3d at 72. Further, plaintiff does not allege that C.O. Butsch was aware of the deadline for filing the pro se supplemental brief at the time he confiscated the C.D.s or that he would have timely filed his supplemental brief but for C.O. Butsch confiscating the C.D.s. See, e.g., Wilson v. Bradt, No. 14-CV-6226 (CJS), 2018 WL 4409993, at *2, *10 (W.D.N.Y. Sept. 17, 2018) (dismissing pro se inmate's denial of access to the courts claim based on correctional officials' refusal to mail the plaintiff's pro se supplemental brief to the Appellate Division where there was "no indication . . . that [the correctional] officials were aware, at the time, of [the p]laintiff's deadline for submitting papers to the Appellate Division"; the plaintiff failed to follow DOCCS postage regulations; and his papers, even if mailed when the plaintiff requested, would have been untimely), appeal dismissed (2d Cir. Mar. 1, 2019). Indeed, as discussed in subsection II.B.1., supra, the

23

pleadings, read in concert with plaintiff's exhibits, suggest that the confiscation of the C.D.s did not impact plaintiff's ability to complete and file his pro se supplemental brief, as he explicitly stated that his supplemental brief would be based exclusively on the grand jury materials, which he had not received as of the time he filed his February 2015 motion for an extension at the Fourth Department. See Dkt. No. 10-1 at 10, 12. In any event, as plaintiff alleged, C.O. Butsch confiscated the C.D.s while plaintiff was in the law library, and did so under the belief that the items were contraband; thus, plaintiff's contention that he informed C.O. Butsch about the contents of the C.D.s, and that C.O. Butsch confiscated them with malicious intent is belied by plaintiff's own allegations. See Dkt. No. 36-1 at 2 ¶ 6. Based on the foregoing, it is recommended that plaintiff's First Amendment right of access to the courts claim insofar as asserted against C.O. Butsch be dismissed.

### b. Sgt. Wise

Plaintiff's pleadings and exhibits lack factual allegations suggesting any intent whatsoever on the part of Sgt. Wise and, therefore, fail to establish that he acted deliberately and maliciously to deprive him of the ability to timely file his pro se supplemental brief. See Lasher, 2016 WL 1717205, at *4. In any event, as defendants contend, plaintiff has failed to plausibly allege Sgt. Wise's personal involvement in the alleged constitutional violation. See Dkt. No. 43-1 at 17.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield,

950 F.2d 880, 885 (2d Cir. 1991)).  Further, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement. Therefore, a prison official may not be found liable for a constitutional violation merely because of the acts of those under his control." Kinch v. Artuz, No. 97-CV-2419 (LAP), 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing Colon, 58 F.3d at 874 and Wright, 21 F.3d at 501).  Thus, supervisory officials may not be held liable for their subordinates' constitutional violations merely because they are in a position of authority. See Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996); see also Colon, 58 F.3d at 874 (holding that the fact that the defendant occupied a high-ranking position in the New York prison hierarchy, without more, was insufficient to establish personal involvement). Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676.

Supervisory personnel may be considered personally involved in their subordinate's conduct if:

> (1) the defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon, 58 F.3d at 873 (citing Wright, 21 F.3d at 501 (additional citation omitted)).[10]

Here, plaintiff has failed to allege facts from which the Court could plausibly infer Sgt. Wise's personal involvement in either the confiscation of the C.D.s or the purported deprivation of plaintiff's access to them, as plaintiff alleges only that he informed Sgt. Wise that he had previously been authorized to possess the C.D.s—at some unspecified time after the C.D.s had been confiscated.  See Dkt. No. Dkt. No. 43-1 at 17; see Lasher, 2016 WL 1717205, at *6 (dismissing the pro se inmate's right of access to the courts claim where the complaint was "devoid of factual allegations to plausibly suggest that [the] defendants . . . were involved in the alleged denial of access to legal materials as recounted in the complaint.").  Even assuming Sgt. Wise was acting in a supervisory capacity over C.O. Butsch—which plaintiff has not alleged—"a prison official may not be found liable for a constitutional violation merely because of the acts of those under his control," as "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement.  Kinch, 1997 WL 576038, at *2.  Moreover, plaintiff has failed to allege facts to establish Sgt. Wise's personal involvement under the factors set forth in Colon, 58 F.3d at 873.   Accordingly, it is recommended that plaintiff's First Amendment right of access to the courts claim be dismissed insofar as asserted against Sgt. Wise.

---

[10]  Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision affected the five Colon factors which were traditionally used to determine personal involvement.  Pearce v. Estate of Longo, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011) (recognizing that several District Courts in the Second Circuit have debated Iqbal's impact on the five Colon factors), rev'd in part on other grounds sub nom., Pearce v. Labella, 473 F. App'x 16 (2d Cir. 2012) (summary order); Kleehammer v. Monroe Cnty., 743 F. Supp. 2d 175, 185 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster . . . ."); D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

### c. Supt. Graham, Mogavero, and Venettozzi

Defendants correctly contend that plaintiff has failed to establish that Supt.

Graham, Mogavero, or Venettozzi acted deliberately and/or maliciously to deprive him

of his right of access to the courts. See Dkt. No. 43-1 at 18. As defendants note,

plaintiff's allegations against Supt. Graham consist entirety of contending that he failed

to respond to plaintiff's April 16, 2015 letter in which plaintiff requested "special access

to the law library and to view the exhibit . . . for completion of [his] supplemental brief."

Dkt. No. 10-1 at 33. Although plaintiff states in his SAC that he specified that he was

seeking to "view[] the material on the two . . . C.D.s," SAC at 4 ¶ 10, his vague April 16,

2015 letter contained no such specific request. See Dkt. No. 10-1 at 33. Thus, plaintiff

fails to advance any nonconclusory allegations that Supt. Graham "acted deliberately

and maliciously" to prevent plaintiff from completing his pro se supplemental brief, or

that Supt. Graham was even aware of the confiscation of the C.D.s at the time plaintiff

wrote his April 16, 2015 letter. Lasher, 2016 WL 1717205, at *4; see also Richard v.

Fischer, 38 F. Supp. 3d 340, 351 (W.D.N.Y. 2014) ("Pleadings pursuant to § 1983 must

contain 'more than mere conclusory allegations.'" (ellipsis omitted) (quoting Salahuddin

v. Cuomo, 861 F.2d 40, 43 (2d Cir. 2003)).

Plaintiff's claims against Venettozzi are similarly deficient. He contends only that,

in reversing the April 9, 2015 hearing determination on April 21, 2015, Venettozzi was

full [sic] aware of the confiscation of [the two] C.D.s that was part of the Appellate

record," and "should have made it possible for the viewings by contacting Auburn . . . to

satisfy the plaintiff's right of access to the court." Dkt. No. 36-1 at 5 ¶ 12; see Dkt. No.

10-1 at 39. However, as defendants aver, plaintiff fails to plausibly allege that

Venettozzi acted deliberately and maliciously to obstruct his access to the C.D.s by failing to require officials at Auburn to provide plaintiff access to the discs—an action that plaintiff does not allege Venettozzi was authorized to direct.  See Dkt. No. 43-1 at 18.  Even if Venettozzi did have the ability to direct Auburn officials to grant plaintiff access to the C.D.s, plaintiff proffers no allegations to establish that Venettozzi acted deliberately and maliciously to hinder plaintiff's right of access to the courts.  See Lasher, 2016 WL 1717205, at *4.

Moreover, plaintiff does not plausibly allege that Mogavero made his April 9, 2015 determination with the deliberate and malicious intent of hindering plaintiff's ability to file his pro se supplemental brief.  Plaintiff's claim that he pleaded guilty to possessing contraband "under duress due to the imports [sic] of completing his supplemental brief," Dkt. No. 50 at 3, because Mogavero tricked him into believing he would be given "time served and release[d] from [SHU] to complete the supplemental brief," Dkt. No. 36-1 at 3 ¶ 7, lacks factual allegations establishing that Mogavero was aware of the contents of the C.D.s or acted with malicious intent to deprive plaintiff of access to the courts.  See Dkt. No. 36-1 at 3-4 ¶ 7; Lasher, 2016 WL 1717205, at *4. Indeed, conspicuously absent from plaintiff's allegations is any assertion that he informed Mogavero that he needed the C.D.s to complete his pro se supplemental brief. See Dkt. No. 36-1 at 3 ¶ 7; Dkt. No. 50 at 3.  Based on the foregoing, it is recommended that plaintiff's First Amendment right of access to the courts claim be dismissed insofar as asserted against Supt. Graham, Venettozzi, and Mogavero.

**d. Parmiter**

28

As discussed above, see supra, at 15 n.8, plaintiff did not oppose Klock's and Parmiter's motion to dismiss and, although plaintiff's opposition to the motion to dismiss of Supt. Graham, Sgt. Wise, C.O. Butsch, Mogavero, and Venettozzi asserted arguments with respect to Klock, it did not assert any arguments with respect to his claims against Parmiter. See generally Dkt. No. 50. Consequently, it is recommended that plaintiff's claims against Parmiter be dismissed as abandoned. See Heyliger v. West, No. 9:18-CV-0336 (TJM/TWD), 2019 WL 4757334, at *4 (N.D.N.Y. Sept. 30, 2019) (dismissing the pro se plaintiff's state law claim as abandoned where he failed to respond to that aspect of the defendants' motion to dismiss); Forney v. Forney, 96 F. Supp. 3d 7, 11 (E.D.N.Y. 2015) (deeming abandoned claims the plaintiff failed to oppose in opposition to the defendants' motion to dismiss); see also Thurmand v. Univ. of Connecticut, No. 18-CV-1140 (JCH), 2019 WL 369279, at *3 (D. Conn. Jan. 30, 2019) ("Courts in this Circuit have presumed that plaintiffs have abandoned their claims when they do not oppose a motion to dismiss them." (collecting cases)).

In the alternative, plaintiff's claims against Parmiter should be dismissed for failure to state a claim and for failure to establish her personal involvement in the alleged constitutional violations. Insofar as plaintiff contends that Parmiter violated his right of access to the courts because she did not notify him that Mogavero's April 9, 2015 determination was reversed, plaintiff does not allege any facts indicating that Parmiter was aware of the reversal prior to Venettozzi informing plaintiff of the same or that she acted with the deliberate and malicious purpose of hindering him from filing his pro se supplemental brief. See SAC at 5 ¶ 13; see Lasher, 2016 WL 1717205, at *4. Further, neither the pleadings nor accompanying exhibits establish that Parmiter was in

any position to arrange for plaintiff to view the C.D.s following Venettozzi's reversal.
See generally SAC; Dkt. No. 36-1; Dkt. No. 10-1.  Moreover, defendants correctly argue
that plaintiff has failed to allege, beyond bare conclusory assertions, that Parmiter was
either involved in the confiscation of his C.D.s or deprivation of his access thereto and,
therefore, has failed to establish that she was personally involved in the alleged
constitutional violation.  See Wright, 21 F.3d at 501.  Thus, it is recommended that
plaintiff's First Amendment right of access to the courts claim insofar as asserted
against Parmiter be dismissed.

### e. Klock

Plaintiff's claim—raised for the first time in opposition to defendants' motion to
dismiss—that Klock confiscated the C.D.s sometime between April 10 and April 13,
2015, with knowledge of the May 4, 2015 deadline, and purposefully failed to return
them until the day after the deadline expired, with the intent of preventing him from filing
his pro se supplemental brief, is not plausible.  See Dkt. No. 50 at 3, 8-9.  Plaintiff's
allegations in this regard are purely speculative and unsupported by his own exhibits,
which merely indicate that the Auburn IRC placed the C.D.s in his personal property on
May 5, 2015.  See Dkt. No. 10-1 at 52.  However, as defendants urge, the C.D.s were
treated as contraband until the April 9, 2015 determination was reversed on April 21,
2015, and it is uncertain when plaintiff or officials at Auburn were given notice of
Venettozzi's reversal.  See Dkt. No. 56-1 at 16; Dkt. No. 10-1 at 39.  Moreover, insofar
as plaintiff alleges that Klock was responsible for withholding the C.D.s until after the
deadline, his claim is conclusory, as he does not assert any facts upon which the Court

can plausibly infer that she was the person responsible for withholding the C.D.s or ultimately returning them.  See Cancel v. Goord, No. 00-CV-2042 (LMM), 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001) ("[I]n order to survive a motion to dismiss [an access-to-the-courts claim] a plaintiff must allege not only that the defendant's conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim.").  In any event, as discussed above in subsection II.B.1., supra, plaintiff cannot plausibly allege that defendants' confiscation of the C.D.s prevented him from completing his pro se supplemental brief or obtaining an additional extension and he, therefore, fails to sufficiently allege actual injury, which is fatal to his First Amendment claim.  See Lewis, 518 U.S. at 353.  Accordingly, it is recommended that plaintiff's First Amendment right of access to the courts claim insofar as asserted against Klock be dismissed.


### 3. Plaintiff Fails to Establish that Non-Frivolous Claims were Hindered

The Supreme Court has stated that in order to allege a denial of access to the courts claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint just as much as allegations must describe the official acts frustrating the litigation."  Christopher v. Harbury, 536 U.S. 403, 415 (2002).  The Supreme Court instructed that the underlying claim must "be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope."  Id. at 416.  "[T]he complaint should state the underlying claim in accordance with [Fed. R. Civ. P.] 8(a), just as if it were being independently

pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." Id. at 417-18 (footnote omitted).

Here, as urged by defendants, plaintiff has failed to demonstrate that the claims he purportedly wished to make in his pro se supplemental brief concerning the content on the confiscated C.D.s were nonfrivolous, as required to state a claim for the denial of his First Amendment right of access to the courts. See Dkt. No. 43-1 at 18; Dkt. No. 56-1 at 17; see Christopher, 536 U.S. at 415. As plaintiff noted in opposition, the allegedly exculpatory footage showing the victim using her cell phone and shopping at Price Chopper were "explored during the viewing of the video during trial." Dkt. No. 50 at 8. However, in upholding plaintiff's conviction, the Fourth Department noted that "the evidence of [plaintiff's] guilt [wa]s overwhelming," Lewis, 129 A.D.3d at 1547, and plaintiff fails to allege how, by discussing the Price Chopper footage in his pro se supplemental brief, he would have been able to advance a nonfrivolous argument that was not raised on his behalf by assigned counsel. See Dkt. No. 50 at 7-8. Moreover, insofar as plaintiff contends that he sought to rely on the other C.D., which contained audio footage of the victim's 911 call, he again fails to establish that "the 'arguable' nature of the underlying claim [wa]s more than hope," Christopher, 536 U.S. at 415, as the Fourth Department declined to review his arguments regarding the admissibility of the 911 recording as unpreserved. See Lewis, 129 A.D.3d at 1547.

In any event, the Fourth Department's inclusion of plaintiff's argument concerning the 911 recording in its memorandum indicates that his assigned appellate counsel did, in fact, challenge the admissibility of that recording on appeal. See id. Thus, [s]imply stated, plaintiff fails to allege any facts to plausibly suggest that a non-frivolous claim

was actually hindered or prejudiced because of the alleged [confiscation or] denial of access to [the C.D.s]."  Lasher, 2016 WL 1717205, at *5.  Finally, as discussed in subsection II.B.1, supra, plaintiff made clear that his actual innocence, prosecutorial misconduct, and ineffective assistance were, in fact, exclusively based on alleged issues involving the grand jury—which bear no relation to the content of the C.D.s—and that without the grand jury minutes, his "pro se brief [would be] submitted solely upon accusations, assumptions, [and] hypothetical [sic]."  See Dkt. No. 10-1 at 12.  Thus, plaintiff has failed to sufficiently allege his purported underlying claims or their connection to the C.D.s, thus providing another independent basis for dismissal of the SAC.  See Christopher, 536 U.S. at 415.  Because the Court concludes that dismissal of plaintiff's First Amendment right of access to the courts claim is appropriate based on the foregoing, the Court declines to reach defendants' alternative argument concerning qualified immunity.


### III. Conclusion

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that the motion to dismiss of Supt. Graham, Sgt. Wise, C.O. Butsch, Mogavero, and Venettozzi (Dkt. No. 43) pursuant to Fed. R. Civ. P. 12(b)(6) be **GRANTED** in its **ENTIRETY**, and it is further

**RECOMMENDED**, that the motion to dismiss of Klock and Parmiter (Dkt. No. 56) pursuant to Fed. R. Civ. P. 12(b)(6) be **GRANTED** in its **ENTIRETY**, and it is further

**RECOMMENDED**, that plaintiff's Second Amended Complaint (Dkt. No. 36) be **DISMISSED** in its **ENTIRETY WITH PREJUDICE**, and it is further

33

**ORDERED**, that that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.[11]

Dated: February 3, 2020
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[11]  If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).